UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN ODOM HARRIS JR.,<br><br>Defendant. | 4:24-CR-40133-RAL<br><br><br>OPINION AND ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE |

Defendant John Odom Harris Jr. was indicted in the District of South Dakota for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Doc. 1. Harris now moves to transfer venue to the Eastern District of California pursuant to Rule 21 of the Federal Rules of Criminal Procedure. Doc. 19. The Government opposes Harris's motion. Doc. 24. This Court held a hearing on March 3, 2025, to consider argument from both parties. For the reasons explained below, Defendant's Motion to Transfer Venue, Doc. 19, is denied.

## I.     Factual and Procedural Background

The indictment charges Harris with conspiracy to distribute, in South Dakota and elsewhere, 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Doc. 1. Harris is from Lodi, California, located in the Eastern District of California, and until his arraignment apparently had never been physically present in the District of South Dakota. Doc. 38 at 1, 4. Harris is on pretrial release and now lives in Stockton, California, with his grandmother. Id. at 1. The Government seeks to prove that Harris sourced methamphetamine to a co-conspirator who transported the methamphetamine by train and

1

car from California to Sioux Falls, South Dakota. That co-conspirator with the assistance of others allegedly distributed many pounds of the Harris-supplied methamphetamine in and around Sioux Falls, South Dakota. The Government also intends to prove that Harris mailed to a co-conspirator at least two packages containing methamphetamine—one to Tea, South Dakota, and at least one to Sioux Falls, South Dakota—in exchange for money wire-transferred from South Dakota to or for the benefit of Harris.

## II.     Discussion

Individuals accused of a crime have "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Unless otherwise permitted by statute or the Federal Rules of Criminal Procedure, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. An offense committed in more than one district may be "prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). An offense involving mail or transportation in interstate commerce is a "continuing offense" and may be "prosecuted in any district from, through, or into which such commerce [or] mail matter" moves. Id.; see United States v. Redfearn, 906 F.2d 352, 353–55 (8th Cir. 1990).

"Specifically, in a conspiracy case, venue is proper in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there." United States v. Banks, 706 F.3d 901, 904–05 (8th Cir. 2013) (cleaned up and internal quotations omitted); see also United States v. Hull, 419 F.3d 762, 768 (8th Cir. 2005). "Where the relevant facts are disputed, venue is a question of fact for the jury to decide," but "where the relevant facts are not in dispute, the court may determine venue as a matter of law." United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010). Harris does not argue

that venue is improper in the District of South Dakota, but instead contends that his case should be transferred to the Eastern District of California. Doc. 19-1 at 3–4.

> Fed. R. Crim. P. 21 allows transfer under two circumstances:
>
> (a)      For Prejudice. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.
>
> (b)      For Convenience. Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

Fed. R. Crim. P. 21(a), (b). Rules 21(a) and 21(b) are to be considered separately, and any local prejudice insufficient for transfer under Rule 21(a) is not to be weighed under Rule 21(b). Jones v. Gasch, 404 F.2d 1231, 1239 (D.C. Cir. 1967). While transfer under Rule 21(a) is mandatory once a court determines so great a prejudice exists to prevent the defendant from obtaining a fair and impartial trial, "the grant of transfer under [Rule 21(b)] is a matter of the discretion of the district judge." United States v. McGregor, 503 F.2d 1167, 1169 (8th Cir. 1974). Harris argues transfer of venue is appropriate under both subparts. See Doc. 19-1 at 3–4. This Court addresses each in turn.

### A.  Rule 21(a)

Harris asserts that pretrial publicity concerning his case prevents him from obtaining a fair trial in the District of South Dakota. Doc. 19-1 at 3–4. He cites two news articles and a United States Attorney's Office press release that may relate to his case. Id. However, neither the news articles nor the press release mentions Harris by name. Doc. 43 at 10–19. Nor do those news articles and press release mention the names of the people discussed in briefing as the principal co-conspirators.

3

"A motion to change venue must be granted if pretrial publicity was so extensive that a reviewing court is required to presume unfairness of constitutional magnitude." United States v. Rodriguez, 581 F.3d 775, 785 (8th Cir. 2009) (cleaned up and internal quotations omitted). The presumption of prejudice resulting from pretrial publicity "is reserved for rare and extreme cases" because "our democracy tolerates, even encourages, extensive media coverage of crimes." United States v. Blom, 242 F.3d 799, 803 (8th Cir. 2001). The two news articles and the press release at issue do not establish any prejudice to justify transfer of venue under Rule 21(a). Any concerns of prejudice under Rule 21(a) from the press release or news articles may properly be addressed during voir dire.

### B. Rule 21(b)

A Rule 21(b) transfer is discretionary, and a defendant bears the burden of demonstrating its justification. United States v. McManus, 535 F.2d 460, 463 (8th Cir. 1976) (noting "the government's choice of forum is ordinarily to be respected" but that the defendant "may overcome that presumption"). When considering a motion to transfer to serve the interest of justice under Fed. R. Crim. P. 21(b), a district court considers factors set forth in Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240 (1964). See United States v. Hardaway, 999 F.3d 1127, 1130 (8th Cir. 2021) (citing Platt, 376 U.S. at 244). Those factors include:

> (1) location of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

McGregor, 503 F.2d at 1170. The defendant's home has no independent significance in determining whether transfer is in the interest of justice but is relevant when considering convenience under Rule 21(b). Platt, 376 U.S. at 245–46.

4

The <u>Platt</u> factors have existed now for over fifty years.  While some courts have analyzed them in the order listed, the Eighth Circuit recently chose to discuss them somewhat tersely and generally when affirming a denial of transfer under Rule 21(b).  <u>Hardaway</u>, 999 F.3d at 1130.  The <u>Platt</u> factors, it strikes this Court, divide into three groups: a) location of defendant and disruption of defendant's business; b) location of witnesses, events, documents, and counsel and related expense to the parties; and c) other factors such as and accessibility of and docket conditions of the courts.  This Court considers those groups of factors now.

### Location of Defendant and Disruption of Defendant's Business

Factors one (location of the defendant) and five (disruption of the defendant's business) favor transfer and probably would favor transfer in nearly any case where a defendant files a motion to transfer venue under Rule 21(b).  Harris is on pretrial release in California where he resides with family, including his children on weekends.  Doc. 36 at 1.  Venue in South Dakota makes meeting with his attorney, who is in South Dakota, more difficult.  <u>Id.</u> at 1–2.  Either Harris or his South Dakota counsel has to travel some 1,700 miles to meet in person.  <u>Id.</u>  Travel for attorney meetings and ultimately for the trial would take Harris away from his family, but inconvenience to family and personal life exists to some extent for any criminal defendant, regardless of venue.  <u>See</u> <u>United States v. Flom</u>, No. 14-CR-507 RRM, 2015 WL 6506628, at *7 (E.D.N.Y. Oct. 27, 2015) ("[A] criminal trial invariably imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities." (cleaned up and internal citations omitted)).

Modern technology, however, allays some concerns associated with these factors.  Harris can communicate with his attorney via phone, email, and video call to discuss his case.  In-person meetings are vital for rapport building between an attorney and client and sometimes for reviewing

discovery together. But the advent of Teams, Zoom, FaceTime, and other such means of communication reduces the need for as many in-person meetings. And if Harris wants to review hard copies of documents in person and apart from his South Dakota attorney, arrangements can be made for Harris to view those at a nearby Federal Public Defender Office in Sacramento or for this Court to authorize funds under the Criminal Justice Act for a paralegal or investigator in California to assist South Dakota counsel, thereby ensuring no disclosure of restricted discovery while allowing Harris to view materials. Factors one and five still weigh somewhat in favor of transfer.

### Location of Witnesses, Events, Documents, and Counsel; Expense to the Parties

Platt factors two, three, four, six, and seven weigh against transfer. Investigation of this case occurred in South Dakota. Nearly all of the Government's potential witnesses are located in or around South Dakota. Doc. 24 at 8–9. These witnesses include local law enforcement, federal law enforcement, people involved in chain of custody of evidence, witnesses to extraction of message and phone call information from cell phones, at least one cooperating witness, South Dakota post office employees, and others. Id.

Events allegedly occurred in multiple states, including California, Nebraska, and South Dakota, but the Government intends to show that multiple pounds of methamphetamine were being trafficked into South Dakota through Harris mailing packages to South Dakota and co-conspirators transporting the methamphetamine supplied by Harris from California. Id. at 2–6. The distribution of the methamphetamine occurred in South Dakota. A traffic stop resulting in the seizure of methamphetamine connected to the conspiracy occurred in South Dakota. Id. at 8–9. Documentation related to the case is in South Dakota, including on cellphones seized in South Dakota. Id. at 9. Both parties have counsel in South Dakota. Harris's counsel practices in Sioux

6

Falls, Doc. 36 at 1, and is experienced in representing criminal defendants within the District of South Dakota.

Harris argues for transfer because most, if not all, defense witnesses he anticipates possibly calling reside in California. Doc. 36 at 2. Given that Harris is indigent, witness expenses for Harris's defense would be paid in the same manner as the Government's witnesses under Fed. R. Crim. P. 17(b). See Hardaway, 999 F.3d at 1131. The expense of travel for Harris's possible defense witnesses does not outweigh the expense of travel for the many prosecution witnesses and counsel based in South Dakota. Thus, the location of witnesses, events, documents and counsel, as well as the expense to the parties, weigh somewhat strongly against transfer of venue.

### Accessibility, Docket Conditions, and Other Special Elements

The remaining factors do not weigh in favor of transfer. Sioux Falls, South Dakota, has an airport and is accessible to Harris. He will not have to bear the cost of traveling to Sioux Falls for trial, as the expense will be covered by the Government under 18 U.S.C. § 4285.

Docket conditions of relative districts weigh against transfer. Judicial caseload profiles show that while the District of South Dakota has one of the heaviest criminal caseloads per judgeship, its overall caseload is less than the Eastern District of California. See United States District Courts – National Judicial Caseload Profile 63, 67 (2024).[1] The average time from filing to disposition of criminal felony cases in South Dakota is 10.8 months but 32.9 months in the Eastern District of California. Id. The District of South Dakota recently was ranked as the fourth

---

[1] This report can be found at https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf. The data indicate that the Eastern District of California has the third highest number of filings in the nation per judgeship, whereas the District of South Dakota ranks 46 out of 94 district courts. Id. at 63, 67. This is the sort of information that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" under Fed. R. Evid. 201(b) and this Court takes judicial notice of the information under Rule 201(b)(1).

most productive district court out of the 94 total district courts.[2]  But with the confirmation of two

new district judges in 2024 and the concerted effort to reduce the backlog of criminal cases in the

Western Division of the District of South Dakota, this Court is well positioned to handle this case

in an appropriate and timely manner.  These statistics and other considerations reveal that the

relative docket conditions weigh against transfer.  See also United States v. Prasad, No. 2:16-CR-

00244-KJM, 2018 WL 3706836, at *6 (E.D. Cal. Aug. 3, 2018) ("It is no secret that the Eastern

District of California carries one of the most congested dockets in the country.").

Finally, this Court has considered the need for Harris to support his children, grandmother,

and girlfriend.  Doc. 38 at 2–3.  Harris while on pretrial release can support his family and loved

ones within the parameters set in his bond conditions.  Trial, whether in South Dakota or in

California, will interfere with his daily life.  This Court does not find any special elements favor

transfer in this case.  On balance, the Platt factors weigh against transfer of venue under Rule

21(b).

### III.    Conclusion

For the reasons explained above, Defendant's Motion to Transfer Venue, Doc. 19, is

denied.

DATED this  5th  day of March, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

---

[2] This statistic comes from America's Most Productive Federal District Courts (Sept. 30, 2024), which extracts data from the Administrative Office Statistics Division's district court trial tables T-4, T-6, and T-8 and ranks district courts by bench presence and cases tried by active judges in that district.  The Eastern District of California is ranked in the top 25 for productivity.