UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN ODOM HARRIS JR., a/k/a "Jezz," <br><br> Defendant. | 4:24-CR-40133-RAL <br><br><br> OPINION AND ORDER <br> ON MOTIONS IN LIMINE |

A grand jury indicted John Odom Harris Jr. on one count of conspiracy to distribute a controlled substance. Doc. 1. Harris has pleaded not guilty to the charged offenses and has exercised his right to a jury trial. On July 6, 2026, this Court held a pretrial conference and motion hearing, where it heard argument on the United States' Motions in Limine, Doc. 208, and on Defendant Harris's Motions in Limine, Docs. 198, 199, 200, 209, 217. This Court now formalizes its rulings with this Opinion and Order.

## I.     Legal Standard

Rulings on motions in limine are by their nature preliminary. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019). They "developed pursuant to the district court's inherent authority to manage the course of trials," Luce v. United States, 469 U.S. 38, 41 n.4 (1984), and are "specifically designed to streamline the presentation of evidence and avoid unnecessary mistrials," Spotted Horse, 916 F.3d at 693. This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction.

1

Motion in limine, Black's Law Dictionary (11th ed. 2019). Rulings on motions in limine necessarily occur before the nature and relevance of the evidence can be placed in full context. See Spotted Horse, 916 F.3d at 693. Therefore, a district court has broad discretion when ruling on motions in limine and retains the authority to revisit and change its rulings based on how the case unfolds. Luce, 469 U.S. at 41–42. If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain a contrary ruling.

## II.     Discussion

### A. The United States' Motions in Limine

The United States' Motions in Limine, Doc. 208, has ten subparts and seeks (1) to exclude reference to penalty and punishment; (2) to exclude opining on the guilt or innocence of the Defendant; (3) to exclude reference to matters required to be raised by pretrial motion under Fed. R. Crim. P. 12(b)(3); (4) to exclude reference to the United States' charging decisions in this matter; (5) to permit DEA Special Agent Lance "Tommy" Wheeler to sit at counsel's table during trial; (6) to exclude evidence or argument relating to the jury's power of nullification; (7) to exclude references to plea negotiations; (8) to bifurcate the testimony of Sergeant Dan Mihajlovic; (9) to exclude hearsay statements of a defendant offered by a defendant; and (10) to limit expert testimony by the defense expert. Each is addressed below.

### 1.  Reference to Penalty or Punishment

Under subpart one, the United States moves to preclude Harris, his attorney, and any witness from referring to the possible penalty or punishment Harris will face if convicted of the

2

crime charged. The United States argues that permitting the jury to hear information about what penalty or punishment Harris faces would be improper and would only confuse the jury.

"It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994) (cleaned up and citation omitted). The jury's role "is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." Id. "[P]roviding jurors sentencing information invites them to ponder matters . . . not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. (citation omitted). The jury must be able to carry out its role uninfluenced by the consequence of its verdict. See id. at 578 (citation omitted); United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost never instructed concerning the consequences of verdicts.").

Accordingly, this Court grants the United States' Motions in Limine as to subpart one. There shall be no reference to or comment on the possible penalty or punishment Harris could receive if convicted. This does not, however, preclude Harris from referring to the charge as a "serious" or "felony" offense.

### 2. Opining on Guilt or Innocence

Under subpart two, the United States requests an order barring Harris, his attorney, and any witnesses from expressing their opinion about the guilt or innocence of Harris. Evidence expressing an opinion on a defendant's innocence or guilt "invades the province of the jury" and is inadmissible. See United States v. Thirion, 813 F.2d 146, 156 (8th Cir. 1987) (reasoning that a government witness's opinion that defendant was innocent "is not truly exculpatory evidence because it is inadmissible as it invades the province of the jury"); Wesson v. United States, 164

F.2d 50, 55 (8th Cir. 1947) ("And any such unnecessary opinion evidence in a criminal case that will inescapably be a plain expression of the witness's opinion of the defendant's guilt . . . should be scrupulously avoided."). Therefore, no witness or attorney may opine on the guilt or innocence of Harris. This, of course, does not preclude Harris from potentially testifying about his innocence nor prevent his attorney from asserting actual innocence or arguing that the evidence presented at trial does not establish guilt beyond a reasonable doubt.

### 3. Reference to Matters Required to Be Raised by Pretrial Motion (Fed. R. Crim. P. 12(b)(3))

Next, the United States seeks to prohibit Harris from referencing matters that should have been brought before this Court by pretrial motion under Fed. R. Crim. P. 12(b)(3). In relevant part, Rule 12(b)(3) provides that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
> (A) a defect in instituting the prosecution, including:
> (i) improper venue;
> (ii) preindictment delay;
> (iii) a violation of the constitutional right to a speedy trial;
> (iv) selective or vindictive prosecution; and
> (v) an error in the grand-jury proceeding or preliminary hearing;
> (B) a defect in the indictment or information, including:
> (i) joining two or more offenses in the same count (duplicity);
> (ii) charging the same offense in more than one count (multiplicity);
> (iii) lack of specificity;
> (iv) improper joinder; and
> (v) failure to state an offense;
> (C) suppression of evidence;
> (D) severance of charges or defendants under Rule 14; and
> (E) discovery under Rule 16.

Additionally, although not explicitly listed under Rule 12(b)(3), a defendant's argument that law enforcement engaged in "outrageous government conduct"[1] is a question of law and therefore must be "raised as a pre-trial motion to dismiss the indictment." United States v. Nguyen, 250 F.3d 643, 645–46 (8th Cir. 2001) (stating that the failure to file a pre-trial motion to dismiss the indictment based on outrageous government conduct "waives the issue" (citing United States v. Henderson-Durand, 985 F.2d 970, 973 n.4 (8th Cir. 1993))); see also United States v. Duncan, 896 F.2d 271, 274–75 (7th Cir. 1990) (agreeing "with the Second Circuit that an outrageous governmental conduct defense must be made the subject of a pre-trial motion" (citing United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir. 1980)).

Unless otherwise set by the court, the deadline to file motions under Rule 12(b)(3) is the start of trial. Fed. R. Crim. P. 12(c)(1), (c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."); see United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011). In this case, the deadline for filing such motions was June 23, 2026. Doc. 142. A party's failure "to [timely] file a pretrial motion by the deadline" constitutes a waiver of that issue. Trancheff, 633 F.3d at 697. Although a court has the discretion to excuse a waiver and review an untimely filed pretrial motion, id., the party seeking the court's review must show good cause, meaning they "must show both cause and prejudice." United States v. Mayer, 63 F.4th 680, 683 (8th Cir. 2023) (citation omitted). Thus, absent good cause shown, Harris may not raise or argue a defense, objection, or request enumerated under Rule 12(b)(3) at trial.

---

[1] Outrageous governmental conduct refers to "conduct of law enforcement agents [that] is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–32 (1973). The United States Court of Appeals for the Eighth Circuit has stated that "[t]he level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting United States v. Pardue, 983 F.2d 835, 847 (8th Cir. 1993)).

#### 4.  Reference to Government's Charging Decisions in This Matter

The United States requests an order preventing Harris, defense counsel, and any witness from making direct or indirect reference to the United States' charging decision in this matter. References to the United States' charging decisions generally offer "minimum probative value" and are typically "outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury." United States v. Reed, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases where other courts of appeal upheld exclusion of evidence of prior charging decisions); United States v. Noske, 117 F.3d 1053, 1058 (8th Cir. 1997) (affirming district court's exclusion of IRS agent's recommendation against prosecuting defendant).

This Court grants subpart four of the United States' Motions in Limine and both parties will be precluded from referring to the United States' charging decision or law enforcement decisions to investigate, but this does not impede Harris from attacking the credibility of the prosecution witnesses or contesting the evidence presented in the case.

#### 5.  Request for Investigator to Sit at Counsel Table

Subpart five requests that DEA Special Agent Lance "Tommy" Wheeler be allowed to sit at counsel table during trial as the designated case agent. This Court grants subpart five of the United States' Motions in Limine.

#### 6.  Jury Nullification

Subpart six seeks to prevent Harris, defense counsel, and any witness from making direct or indirect reference to jury nullification. Such information is not relevant to Harris's guilt or innocence. See United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) ("[T]he power of juries to 'nullify' or exercise a power of lenity is just that – a power; it is by no means a right or something

6

that a judge should encourage or permit if it is within his authority to prevent."). This Court grants subpart six of the United States' Motions in Limine.

### 7. References to Plea Negotiations

Subpart seven seeks to prevent Harris, defense counsel, and any witness from making any comments or references, whether direct or indirect, to plea negotiations in this matter. The United States argues that such information is not relevant to Harris's guilt. Rule 410(a) of the Federal Rules of Evidence renders plea discussions inadmissible. The exceptions to that rule contained in Rule 410(b) do not apply here. This Court grants subpart seven of the United States' Motions in Limine.

### 8. Ability to Bifurcate Testimony of Sergeant Mihajlovic

Subpart eight seeks an order in limine to allow the United States to have Sergeant Dan Mihajlovic testify first as a fact witness and then recall him at a later point to provide his expert testimony in order to comply with United States v. Overton, 971 F.3d 756 (8th Cir. 2020). "Dual-role testimony in a case like this," a drug conspiracy case, "is 'not categorically prohibited,' but 'district courts and counsel should take appropriate measures to minimize the problems that may arise from dual-role testimony by a case agent.'" Overton, 971 F.3d at 765 (quoting United States v. Moralez, 808 F.3d 362, 366 (8th Cir. 2015)). The Eighth Circuit has commented that "[o]ne measure that is often appropriate is 'bifurcating the questioning,' but other measures may also be appropriate so long as 'the questioning and jury instructions sufficiently guard[] against the risks' associated with dual-role testimony." Id. at 763 (quoting Moralez, 808 F.3d at 366). Therefore, consistent with this recommended measure from the Eighth Circuit, this Court grants subpart eight of the United States' Motions in Limine, and the United States may bifurcate Sergeant

7

Mihajlovic's testimony to have him first testify about facts specific to this case and then testify as an expert, if so qualified, to what certain jargon, words, and phrases mean in narcotics trafficking.[2]

### 9. Hearsay Statements of a Defendant Offered by a Defendant

Subpart nine seeks an order in limine precluding Harris, defense counsel, and any witness from introducing, through his witnesses or others, prior statements by himself. The United States argues that allowing Harris to put his own statements in through other witnesses denies the United States the right of cross-examination of the defendant. In affirming the exclusion of a defendant's prior statement, the Eighth Circuit highlighted that the defendant had not taken the stand and therefore was not subject to cross-examination, and that it could not "think that the privilege against self-incrimination extends so far as to allow a defendant's statements to be admitted without also allowing the government a chance to explore the facts surrounding them for motive and other relevant matter." United States v. Greene, 995 F.2d 793, 799 (8th Cir. 1993). See also United States v. Love, 521 F.3d 1007, 1009 (8th Cir. 2008) (affirming where the district court sustained an objection to defense counsel's attempt to introduce defendant's exculpatory statement through law enforcement agent's testimony); United States v. Sadler, 234 F.3d 368, 372–73 (8th Cir. 2000) (affirming where the district court excluded defendant's exculpatory prior statements after defense counsel attempted to introduce these statements through the testimony of defendant's former lawyer). Harris made no statement to law enforcement at all, so the rule of completeness does not complicate this ruling. This Court grants subpart nine of the United States' Motions in Limine subject to revisiting the ruling if there is good cause to do so.

---

[2] Part II.B of this Opinion and Order elaborates on what opinions Sergeant Mihajlovic is expected to give.

### 10. Limit Expert Testimony by Defense Expert Graham Finochio

Subpart ten seeks to preclude the defense expert Graham Finochio from testifying on opinion 1, that the communications do not establish references to John, Geez, Geezy, or Jeezy refer to Harris, and opinion 6, that the reviewed communications contain indicators of friendship between the main cooperating witness[3] ("the cooperator") and Harris and not drug trafficking. The United States argues that these are both conclusions that the jury can determine on its own without the assistance of an expert as the proposed testimony does not require special knowledge or experience. Harris opposes this request.

An expert witness may offer opinion testimony that is based on specialized knowledge gained from training and experience. Fed. R. Evid. 702. "Daubert sets forth four factors which the district court should consider in determining whether the proffered expert testimony qualifies as 'scientific knowledge,'" which "include: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate for error; and (4) the particular degree of acceptance within the scientific community." United States v. Kime, 99 F.3d 870, 883 (8th Cir. 1996) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591–95 (1993)). As the United States highlights, "the advisory committee's notes make it clear that when the layman juror would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous." Id. at 884.

This Court did not previously have a copy of the disputed opinions or Finochio's qualifications and publications. See Doc. 190 (providing only notice of service of Defendant's Disclosure of Expert Witness Graham Finochio); Doc. 231-1 (sealed filing of expert report). This

---

[3] There are several cooperating witnesses on the witness list of the United States.

Court does not know yet what foundation will be laid for Finochio's opinions. Defense counsel represented that Finochio has additionally reviewed social media outside of the text messages and found other social media profiles for "Geez." This Court has now received Finochio's opinion and curriculum vitae but will reserve ruling on subpart ten of the United States' Motions in Limine until the beginning of Harris's case in chief.

### B. Harris's Motion to Exclude or Limit Government Expert Witness Testimony

Harris requests an order excluding or limiting the proposed expert testimony of Sergeant Mihajlovic. Doc. 198. Specifically, Harris requests that this Court (1) "preclude Sergeant Mihajlovic from attributing the charged communications—or the telephone number associated with them—to Defendant;" (2) "preclude any opinion that Defendant himself knew of, intended, or engaged in the distribution of a controlled substance;" (3) "preclude Sergeant Mihajlovic from narrating and interpreting specific communications as descriptions of particular drug transactions;" and (4) "preclude the specific quantity- and price-based extrapolations set out in the disclosure." Id. at 1–2. In the alternative, Harris requests that this Court hold a Daubert hearing on Sergeant Mihajlovic's proposed testimony. Id. at 2.

The United States does not oppose the first part of the motion but otherwise opposes the motion. Doc. 211. First, the United States posits that the cooperator who obtained methamphetamine from Harris will testify that he had communications with Harris on a phone that was seized. That cooperator will testify that Harris used the phone number (209) 414-7740. Thus, the cooperator and not Sergeant Mihajlovic will connect Harris to the phone and communications at issue. Id. at 1. Second, the United States discloses that Mihajlovic will testify that the communications and quantities involved in this case are consistent with a pattern that he knows is common for drug trafficking and not that Harris had the intent to distribute. Id. at 2. Third, the

United States argues that under Rule 702, an experienced investigator like Mihajlovic may opine on "specific quantity and price extrapolations" and "drug jargon," within the messages. Id. at 2–3 (citing United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003); Morales, 808 F.3d at 365; United States v. Avalos, 817 F.3d 597, 601 (8th Cir. 2016)). Finally, the United States argues that there is no need for a Daubert hearing as Mihajlovic's experience qualifies him to testify as an expert in these areas. Id. at 4.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, an expert in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b); see also United States v. Brown, 241 F. App'x 890, 893 (3d Cir. 2007) (stating that an "expert witness is thus prohibited from testifying that a defendant knowingly possessed or had the intent to distribute a controlled substance" where defendant was charged with violating 21 U.S.C. § 841(a)(1)). "The exception does not apply in civil cases or affect lay witness testimony." Diaz v. United States, 602 U.S. 526, 534 (2024).

The United States has given notice that it intends to call Mihajlovic as an expert witness, Doc. 188, and has sought to bifurcate his expert testimony from his fact testimony, Doc. 208. Mihajlovic will testify separately about his involvement in the investigation and during his expert testimony provide his opinion on issues related to methamphetamine trafficking, including typical distribution and usage or user amounts; trade tools, mechanisms, and methods of distributors; common terminology; and drug prices. See id. at 3–6. It appears that Mihajlovic will testify about the cell phone number in his fact witness capacity if and after the cooperator has identified the phone number as being associated with Harris. If that foundation has been laid, Mihajlovic, as a

11

fact witness, may describe the messages as being between the cooperator and Harris, as well as the evidence he gathered about the phone number.  However, Mihajlovic may not give as an opinion that "Geez" was in fact Harris.  With regard to his expert testimony, consistent with Rule 704(b), Mihajlovic may testify on the subparts discussed above, such as the difference between typical user amounts and distributable amounts of methamphetamine, but he may not opine on the ultimate issue of whether Harris had the intent to distribute methamphetamine.

Finally, with regard to Harris's request for a Daubert hearing, this Court looks to Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony.  Under Rule 702, the trial judge acts as a "gatekeeper" screening the evidence for relevance and reliability.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).  "A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify" if the expert's "knowledge will help the trier of fact understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  The proponent of the evidence must demonstrate that the expert witness's testimony is "based on sufficient facts or data" and "the product of reliable principles and methods," and that the expert witness reliably applied those "principles and methods to the facts of the case."  Id. Some factors a court may consider in deciding whether expert testimony is scientific knowledge that will assist the trier of fact include whether the knowledge can be tested, is subject to peer review, has a known or potential error rate, and is widely accepted in the scientific community. Daubert, 509 U.S. at 592–94.  The inquiry is flexible, but "[i]ts overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlies a proposed submission." Id. at 594–95.

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991).  "The rule clearly is

one of admissibility rather than exclusion." Sappington v. Skyjack, Inc., 512 F.3d 440, 448 (8th Cir. 2008) (citation omitted). "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (cleaned up and citation omitted). "[W]hen assessing the admissibility of proffered scientific expert testimony under Rule 702, the trial court must also take into account the interplay of other rules of evidence, such as Rule 403." See Kime, 99 F.3d at 884 (reviewing the interplay between Rules 702 and 403). Rule 403 disallows relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This Court has reviewed Mihajlovic's experience as submitted by the United States, Doc. 188, and has heard him testify as an expert on drug trafficking and jargon previously. Mihajlovic has been a law enforcement officer for eighteen years, including seven and half years of experience as a detective with the Sioux Falls Area Drug Task Force. Id. at 1. "He has received training from the South Dakota Division of Criminal Investigation, the Sioux Falls Police Department, Midwest Counter Drug Training Center, Drug Enforcement Administration, and the Department of Homeland Security on the identification and criminal investigation of persons involved in the manufacture, possession, and distribution of controlled substances[.]" Id. at 1–2. A separate Daubert hearing appears unnecessary here, though this Court will require during the direct examination that the proper foundation is laid for Sergeant Mihajlovic's expert testimony under Rule 702. Therefore, Harris's Motion to Exclude or Limit the Expert Testimony of Mihajlovic, Doc. 198, is granted in part and denied in part.

13

## C. Harris's Motion for Sequestration of Witnesses

Harris requests an order sequestering all government witnesses. Doc. 199. Specifically, Harris requests that this Court's order

> a. exclude all witnesses from the courtroom during trial, except as Rule 615(a) provides;
> b. prohibit any person from disclosing, summarizing, or otherwise communicating trial testimony to any excluded witness who has not yet completed testifying;
> c. prohibit excluded witnesses from accessing trial testimony, including by transcript, recording, readback, notes, or report; and
> d. direct that witnesses be instructed not to discuss their own or any other witness's testimony with any witness who has not completed testifying.

Id. at 3.

"The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and aid in detection of dishonesty." United States v. Engelmann, 701 F.3d 874, 877 (8th Cir. 2012) (citation omitted). "At a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615; see Engelmann, 701 F.3d at 877. Generally, a "district court is granted wide latitude in implementing sequestration orders." Engelmann, 701 F.3d at 877 (citation omitted). And "the decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion." Id. (cleaned up and citation omitted). The United States does not oppose this motion and has requested that the order be reciprocal. Doc. 212. Therefore, all fact witnesses—whether for the United States or Harris—will be sequestered until released from subpoena, except for Agent Wheeler, as indicated above. Harris, of course, is entitled to be in the courtroom throughout the trial.

Harris also requests under Federal Rule of Evidence 615(b) that this Court direct that the United States' case agent testify before other facts witnesses to mitigate the risk that the agent's continuous presence will shape his testimony. Doc. 199 at 3. The United States opposes this

14

request and argues that Harris has not cited any legal authority for this request and Rule 615 does not contain such a requirement. The United States highlights that Agent Wheeler's testimony will be limited principally to the phone extraction from the cooperator's phone and related work, making "the risk of his testimony being tainted by other witnesses seem[] much smaller than that alleged by the defense." Doc. 212 at 1. Under Rule 615(b), to prevent disclosing and accessing testimony, beyond sequestration, a court may also "prohibit disclosure of trial testimony to witnesses who are excluded from the courtroom" and "prohibit excluded witnesses from accessing trial testimony." Harris's request for an order requiring the case agent to testify first is not expressly provided for in Rule 615. This Court agrees with the United States that the nature of Agent Wheeler's testimony presents a low risk that his testimony will be tainted by other witnesses and therefore denies Harris's request to direct Agent Wheeler to testify first. Harris's Motion to Sequester Witnesses, Doc. 199, is granted in part and denied in part.

### D. Harris's Motion for Preclusion of Geolocation, Gladiator Call Detail Analysis and Google Earth Evidence Derived from the Cooperating Witness's Devices

Harris requests an order precluding the United States from offering the following: "(a) cell-phone geolocation or 'top locations' data extracted from devices attributed to [the cooperator]; (b) call-detail-record analysis and 'top calls' reporting generated using the Gladiator forensic platform; and (c) Google Earth maps, pin drops, or plotted coordinates derived from the foregoing." Doc. 200 at 1. Harris contends that the analyst who generated some of this data, Adam Foster, was not disclosed by the United States as one of their experts under Rule 16(a)(1)(G). Harris argues that the evidence may not be offered as a lay opinion, the admission of the material through any witness other than Foster would violate the Confrontation Clause, and the material is irrelevant and unfairly prejudicial to Harris. Id. at 2. Harris alternatively asks for a hearing and an order requiring the United States "to establish the foundation, disclosure, and confrontation

predicate for each category of evidence outside the presence of the jury before any reference to it at trial." Id. at 6.

The United States intends to present geolocation data from the cooperator's phone extraction exported by Agent Wheeler into an excel sheet and plotted into Google Earth to provide exhibits of locations stored in the phone. Doc. 213 at 1. The United States relies on United States v. Jimenez-Chaidez, 96 F.4th 1257 (9th Cir. 2024), where the Ninth Circuit upheld the admission of an agent's testimony "that he connected the cell phone to a Cellebrite device, used Cellebrite to extract and parse data into reports, reviewed the time-stamped GPS coordinates listed on the location-data reports, and then entered those coordinates into Google Maps to identify where the cell phone had been." Id. at 2 (citing 96 F.4th at 1267). The United States argues that the proposed testimony here is also admissible given that the "Ninth Circuit found that GPS information is 'readily available and understandable to the general public' and that the Cellebrite report was in an easily understandable format.[]" Id. (quoting 96 F.4th at 1267).

In Jimenez-Chaidez, the testimony was admissible from a lay law enforcement witness because "[t]he Government limited the scope of [the agent's] testimony to his use of the Cellebrite software and his perceptions of the data that the software produced that are readily understandable without having him opine about the software's technical processes or reliability or other issues that require specialized knowledge." 96 F.4th at 1269. At least one other district court in the Eighth Circuit has found that "an expert is not required to explain how the cellphone data was extracted using Cellebrite" when a defendant moved in limine to exclude "the cellphone data obtained using an application called Cellebrite because the Government [] failed to disclose an expert witness who can testify to the data extraction." United States v. Israel, No. 4:23-CR-00526, 2025 WL 1360661, at *2 (E.D. Mo. May 8, 2025) (citing United States v. Chavez-Lopez, 767 Fed. App'x

16

431, 434 (4th Cir. 2019); United States v. Marsh, 568 F. App'x 15, 17 (2d Cir. 2014) (an officer "did not purport to render an opinion based on the application of specialized knowledge to a particular set of facts" when discussing the extraction of cellphone data through Cellebrite); United States v. Seugasala, 702 F. App'x 572, 575 (9th Cir. 2017) ("The officers who followed the software prompts from Cellebrite and XRY to obtain data from electronic devices did not present testimony that was based on technical or specialized knowledge that would require expert testimony.")).

Given the United States' representations on its planned topics of testimony and exhibits, that Agent Wheeler will only testify as to the fact that he exported data into an excel sheet and then plotted that data into Google Earth to provide exhibits of locations stored in the phone, this Court believes that the proposed topics and exhibits are admissible subject to the proper foundation being laid. Harris's Motion to Exclude Geolocation Data, Doc. 200, is denied to that extent.

The United States subpoenaed records related to the phone it believes belonged to Harris, determined a top contact apparently using the Gladiator software, and attributes that contact to someone in Harris's life. Sergeant Mihajlovic will testify about this work. This Court will determine whether appropriate foundation is laid for such testimony when it is offered.

**E. Harris's Motion for Exclusion of Text Messages**

Harris requests an order excluding text messages under Federal Rules of Evidence 901 and 403 between the cooperator and an individual identified in that witness's phone as "Geez." Doc. 217. Harris previously moved to exclude these messages, which was denied by Magistrate Judge Duffy as premature prior to trial. Doc. 154 at 3–5. Harris argues that the United States' authentication of texts is insufficient: namely that (1) the testimony of the cooperator and (2) a photograph of a California Department of Motor Vehicles letter bearing Harris's name and home

17

address sent from "Geez" neither "alone nor in combination[] satisfies Rule 901." Doc. 217 at 2 (citing United States v. Garrison, 168 F.3d 1089, 1093 (8th Cir. 1999)). As mentioned above, the United States plans to rely on the top contact from records linked to Geez's phone number to further authenticate the phone number as belonging to Harris. The United States seeks to offer the "Geez" messages as Harris's own statements under Rule 801(d)(2)(A). Id. at 6 (citing Doc. 150 at 8; Doc. 154 at 6). Harris highlights that the AT&T records do not contain any kind of identifying information and that the most that the photograph of the letter proves is that the sender had access to a piece of mail from Harris. Id. at 8–9. Harris further raises that the DMV letter presents a hearsay-within-hearsay problem. Id. at 10.

In the United States' earlier response, it discloses that during a proffer interview, the cooperator disclosed that he had "turned to John Harris, who he had known since 2006, to source him methamphetamine." Doc. 150 at 3. The cooperator disclosed that in addition to receiving mail from Harris, he had picked up methamphetamine in person from Harris in California and met with Harris in person to give him cash. Id. The cooperator knew Harris's nickname was "Jezz." Id. The cooperator then identified a photo of Harris. Id. at 4. The messages also indicate that the two individuals texting had calls during the alleged conspiracy.

Under Rule 901, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A witness with knowledge of what an item is may authenticate the evidence. Fed. R. Evid. 901(b)(1). "Once the proponent satisfies the threshold requirements, questions of authenticity become fact questions for the jury." United States v. Walker, 168 F.4th 533, 538 (8th Cir. 2026). In United States v. Wise, 74 F.4th 953 (8th Cir. 2023), the appellant challenged the admission of a burner phone that he claimed the government had failed to authenticate where the information in the phone self-identified as a

person with the same first name as the appellant, contained a picture of his bank card, had texts with his sister, and had been found in his car during a traffic stop. 74 F.4th at 956. The Eighth Circuit concluded the district court did not abuse its discretion in finding there was sufficient evidence to authenticate the phone. Id. (citing United States v. Lamm, 5 F.4th 942, 946–47 (8th Cir. 2021) (stating evidence is sufficiently authenticated when the proponent provides a rational basis demonstrating the evidence is what it is asserted to be)).

The United States has disclosed that the cooperator has known Harris for twenty years, has met with Harris multiple times in person, knows his nickname to be "Jezz," somewhat close to "Geez," and had phone calls with "Geez." Although these facts do not exactly match the facts present in Wise, there are parallel reasons of equal weight as to why the cooperating witness could identify Harris as the user of the "Geez" phone. The cooperator's identification of Harris as the user of the phone may or may not be credited by the jury, but this is not an instance where the cooperator never met the person on the other end of the line or never talked on the phone. If the testimony of the cooperator connects Harris to "Geez" and those text and phone communications, the United States will have satisfied the threshold questions of authentication to present the evidence to the jury. The text messages are relevant to the charge in the indictment, and the text messages' probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury under Rule 403. This Court denies Harris's Motion to Exclude Text Messages, Doc. 217, unless the United States fails to lay the foundation to allow their admission.

Finally, Harris argues that should the United States attempt to offer the text messages as co-conspirator statements under Rule 801(d)(2)(E), it must first satisfy the requirements of United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978). Doc. 217 at 19. "Out-of-court statements

19

offered to prove the truth of the matter asserted are inadmissible hearsay." United States v. Meeks, 756 F.3d 1115, 1119 (8th Cir. 2014) (citing Fed. R. Evid. 801(c), 802). But "[i]t is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." Bell, 573 F.2d at 1043.

In Bell, the Eighth Circuit established a procedure by which a court should address evidence offered pursuant to the exception in Rule 801(d)(2)(E) during a criminal trial. Bell, 573 F.2d at 1044. After a timely objection by the defense, the district court should

> provisionally admit[] the statements and advise[] the parties, on the record at a side-bar conference, that the statements [are] admitted subject to defendant's objection, that the government [is] required to prove by a preponderance of the evidence that the statements were made during the course and in furtherance of the conspiracy, that the court will make an explicit determination as to admissibility at the conclusion of the evidence, and that, if the statements are not admitted, the court will declare a mistrial unless a cautionary instruction would suffice.

United States v. Mayfield, 909 F.3d 956, 960 (8th Cir. 2018) (citing Bell, 573 F.2d at 1044). The district court in Mayfield properly followed the Bell procedure, where it "made its final determination as to admissibility near the end of the government's case but before the [statements] were played for the jury." Id.

Although "[t]he procedures outlined in Bell are flexible and do not require reversal for failure to follow those procedures absent a showing of prejudice," United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997), after a motion in limine seeking to exclude co-conspirator statements, a district court may "conditionally admit[] the evidence before ultimately determining [whether] [the] co-conspirator statements would be allowed pursuant to the procedures outlined in United States v. Bell." United States v. Ramirez-Martinez, 6 F.4th 859, 865 (8th Cir. 2021). This

Court sees no reason to deviate from the <u>Bell</u> procedure in this case, and therefore, it will defer its rulings on the admissibility of any co-conspirator hearsay statements under Rule 801(d)(2)(E) until later in trial.

### F. Harris's Omnibus Motion in Limine

Harris has also filed an omnibus motion in limine. Doc. 209. Harris moves in limine (1) to preclude the United States from offering any evidence, testimony, or argument that Harris is or was a member of, or affiliated with, any gang, including the Crips, or that Harris should be found guilty by reason of his association or friendship with any person alleged to be a gang member; (2) to preclude the United States from offering any prior conviction, arrest, charge, or other bad act of Harris; (3) to preclude the United States from referring to Harris as having a street name or moniker, including "Geez," "Geezy," "Jeezy," or "Jezz," or to the (209) 414-7740 phone number absent adequate foundation; (4) to preclude any law enforcement or lay witness from (a) opining that Harris is guilty, was a member of the charged conspiracy, or is the person known as "Geez"; (b) opining on Harris's knowledge, intent, or other mental state; and (c) interpreting ambiguous words or communications as coded references to drug trafficking in a lay opinion; (5) to preclude the United States from offering the fact of a cooperating witness's guilty plea or conviction as substantive evidence of Harris's guilt and to preclude the United States from eliciting certain testimony from these witnesses; (6) to preclude the United States from offering generalized profile or modus-operandi testimony, which describes the characteristics, practices, or methods of drug traffickers; (7) to preclude the United States from offering evidence of or commenting on Harris's post-arrest, post-<u>Miranda</u> silence or his invocation of the right to counsel or to remain silent; and (8) to preclude the United States from commenting on Harris's decision not to testify, on any

failure by the defense to produce evidence or call witnesses, or from otherwise suggesting that Defendant bears any burden of proof. Each is addressed below.

### 1. Preclusion of Evidence Related to Gang Affiliation

Subpart one of Harris's omnibus motion in limine seeks to preclude the United States from offering any evidence, testimony, or argument that Harris is or was a member of, or affiliated with, any gang, including the Crips, or that he should be found guilty by any reason of his association or friendship with any person alleged to be a gang member. Doc. 209 at 1–3. Harris argues that such evidence is irrelevant and unfairly prejudicial. Harris clarifies that he does not seek "to bar the limited evidence the defense may offer concerning the gang affiliation of [the] cooperating witness . . . and the source of the methamphetamine at issue, which is offered for the distinct, non-propensity purpose of identifying the actual source of supply." Id. at 2. If gang-related evidence is admitted for any purpose, Harris requests a contemporaneous limiting instruction directing the jury that there is no evidence Harris was a gang member and that such evidence may not be considered as evidence of Harris's character or guilt. Id. at 2–3.

At the pretrial conference, it became clear that Harris wants to raise that the cooperator is a gang member and that the United States would counter with evidence Harris is in the "Taliban gang." Defense counsel represented that while the cooperator claimed Harris to be his supplier, recorded prison phone calls with Crips members discussed drug related transactions sourced from someone other than Harris. Harris anticipates cross examination of the cooperator about gang activity.

The Eighth Circuit's "concern under Fed. R. Evid. 403 is that the relevance of gang related evidence not be overwhelmed by the risk that the jury will rest a guilty verdict solely on a defendant's gang affiliation." United States v. Ellison, 616 F.3d 829, 834 (8th Cir. 2010).

"[G]ang-related evidence is often admissible where the defendant is a gang member himself, the issues in the case concern the mere fact of a defendant's gang membership rather than sanctioning a wide ranging inquiry into the generic criminality and violent dispositions of gangs, and the evidence is generally an unavoidable incident of presenting other permissible evidence." United States v. Gaines, 859 F.3d 1128, 1131 (8th Cir. 2017) (cleaned up and citation omitted). In United States v. Roark, 924 F.2d 1426 (8th Cir. 1991), the Eighth Circuit reversed a defendant's conviction where "the government's attempt to tie [the defendant's] guilt directly to his association with the Hells Angels Motorcycle Club," which the panel described as "the entire theme of the trial," "constitute[d] reversible error." 924 F.2d at 1434. "The government cannot [] in its case-in-chief, introduce evidence of [a defendant's] unsavory character merely to show that he is a bad person and thus more likely to have committed the crime." Id. However, the Eighth Circuit has upheld the admission of gang-related evidence where "[t]he evidence proved each defendant's role in the conspiracy and individual criminal conduct." United States v. Franklin, 177 F.4th 915, 930 (8th Cir. 2026).

Given that Harris intends to introduce evidence concerning the cooperator's association with gangs, it is inappropriate to mute the United States in response if it has evidence that Harris was similarly involved with the cooperator in a gang or they knew each other through gang-related activities. This Court denies subpart one of the omnibus motion but may give a limiting instruction on the subject to avoid unfair prejudice.

### 2. Exclusion of Prior Convictions, Arrests, and Other Acts

Subpart two of Harris's omnibus motion seeks to preclude the United States from introducing, eliciting, or referencing in its case-in-chief any prior conviction, arrest, charge, or other bad act of Harris. Doc. 209 at 3. The United States has not filed a Federal Rule of Evidence

23

404(b) notice in this case, and Harris has not decided whether he will testify during his trial. Harris requests that should he chose to testify, this Court hold a hearing outside the presence of the jury on any prior conviction that the United States intends to offer under Federal Rule of Evidence 609(a). Id. The United States has provided three prior convictions it would intend to introduce should Harris testify. See Doc. 226.

Rule 404(b) "prohibits the use of evidence of a defendant's other crimes, wrongs, or bad acts to prove the character of a person in order to show action in conformity therewith[,] [b]ut the rule permits the admission of such evidence to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.'" United States v. Halk, 634 F.3d 482, 486 (8th Cir. 2011) (citing and quoting Fed. R. Evid. 404(b); citing United States v. Trogdon, 575 F.3d 762, 766 (8th Cir. 2009); United States v. Oaks, 606 F.3d 530, 538 (8th Cir. 2010)). "Under Rule 609(a), convictions may be used to attack a witness's character for truthfulness if: (1) subject to Rule 403, the conviction is punishable by more than one year in prison; or (2) the crime's elements required proving 'a dishonest act or false statement.'" United States v. Stoltz, 683 F.3d 934, 938–39 (8th Cir. 2012) (quoting Fed. R. Evid. 609(a)). However, "'if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,]' then the conviction is admissible only if (1) its probative value substantially outweighs its prejudicial effect; and (2) the proponent gives the adverse party written notice of the intent to use the conviction." Id. (quoting Fed. R. Evid. 609(b)). For convictions to be admissible against the defendant in a criminal case, a Rule 403 balancing must occur under Rule 609(a)(1), though crimes involving "a dishonest act or false statement" are admissible under Rule 609(a)(2). This Court reserves ruling on subpart two as it is premature at this point.

### 3. Preclusion of Reference to Street Name of Geez or Geez's Phone as Defendant's Phone

Subpart three of Harris's omnibus motion seeks to preclude the United States and its witnesses from referring to Harris "as 'Geez,' 'Geezy,' 'Jeezy,' or 'Jezz,' or from describing the telephone number (209) 414-7740 as 'the defendant's phone' or 'Harris's phone,' unless and until the Government lays adequate foundation establishing that [Harris] is the person referred to by that moniker and the user of that line." Doc. 209 at 4. Harris argues that allowing reference to this moniker or labeling the phone number as his is "irrelevant absent foundation, unfairly prejudicial, and misleading under Rules 401, 403, and 611(a), and improperly resolve a preliminary question reserved to the Court under 104." Id. Harris requests that until the United States establishes this foundation, references should be to "the user of the 209 line" or "the person the witness knew as Geez." Id. This Court denies subpart three to the extent that the Court is not going to prohibit the United States from referring to those names. If the cooperator testifies as the United States expects, for the reasons explained above foundation could be laid to connect that phone number associated with "Geez" to Harris.

### 4. Preclusion of Opinion as to Harris's Guilt, Mental State, or Interpretation of Communications

Subpart four of Harris's omnibus motion seeks to prohibit any law enforcement or lay witness from

> (a) opining that Defendant is guilty, that Defendant was a member of the charged conspiracy, or that Defendant is the person known as "Geez"; (b) opining on Defendant's knowledge, intent, or other mental state; and (c) interpreting ambiguous words or communications as coded references to drug trafficking under the guise of lay opinion under Rule 701.

Doc. 209 at 4–5. With regard to the first request, this Court has already held no witness or attorney may opine on the guilt or innocence of Harris as evidence expressing an opinion on a defendant's innocence or guilt "invades the province of the jury" and is inadmissible. See Thirion, 813 F.2d

at 156; Wesson, 164 F.2d at 55. If fact witnesses have a basis from which to testify that Harris was a member of the charged conspiracy and is the person known as "Geez," they may testify to that, subject to any objection that Harris may raise at the time of their testimony for lack of knowledge or lack of foundation. As noted above, an expert in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," Fed. R. Evid. 704(b), but "[t]he exception does not apply in civil cases or affect lay witness testimony." Diaz, 602 U.S. at 534. Consistent with the rulings above, an expert witness may not testify to Harris's intent. If fact witnesses have a basis from which to testify that Harris had that intent, they may testify to that, subject to any objection that Harris may raise at the time of their testimony for lack of knowledge or lack of foundation.

Finally, under Rule 701, a lay witness may offer an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on . . . specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Personal knowledge or perceptions based on experience [are] sufficient foundation for lay opinion testimony." United States v. Faulkner, 636 F.3d 1009, 1018 (8th Cir. 2011) (quotation omitted). But "[l]ay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001). In United States v. Turner, 781 F.3d 374 (8th Cir. 2015), the Eighth Circuit held that the government could not offer the testimony of a member of a conspiracy "based on her specialized knowledge of terminology used in drug trafficking—and not based on her own participation in, or personal

26

knowledge of, the recorded conversations" without first qualifying her as an expert. 781 F.3d at 388–89 (citing United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996) ("It is well established that experts may help the jury with the meaning of jargon and codewords.")) (finding improper testimony was not error affecting the substantial rights of the defendant). But "[l]ay witnesses may offer their interpretations of their conversations." United States v. Gilbertson, 970 F.3d 939, 951 (8th Cir. 2020) (citing United States v. Lomas, 826 F.3d 1097, 1106–08 (8th Cir. 2016) (holding that a lay witness may offer an opinion about the meaning of a conversation if the witness participates in it); United States v. Fregoso, 60 F.3d 1314, 1326 (8th Cir. 1995) ("Where a witness is in a position to know what the other party meant, a district court does not abuse its discretion in admitting testimony as to her understanding of the meaning of the words used by the other party." (cleaned up))).

The United States has disclosed Sergeant Mihajlovic as an expert on what some jargon in drug trafficking communications mean, and that has been discussed above and likely will be allowed. Lay witnesses will not be permitted to opine on language used in conversations that they are not participants in, but the United States may permissibly elicit lay testimony in relation to conversations they are participants in as outlined above. Subpart four is therefore granted in part.

### 5. Preclusion of Improper Use of Cooperating Witnesses' Guilty Pleas, Vouching, or Bolstering

Subpart five of Harris's omnibus motion moves to preclude the United States from offering the fact of a cooperating witness's guilty plea or conviction as substantive evidence of Harris's guilt. Doc. 209 at 5–6. The United States does not intend to offer the guilty pleas but intends to have the witnesses explain the guilty pleas and what their understanding is about a Rule 35 motion. Defense counsel does not object to that proposed testimony. This Court has also included in the draft final jury instructions: "A witness's guilty plea cannot be considered by you as any evidence

27

of this defendant's guilt. A witness's guilty plea can be considered by you only for the purpose of determining how much, if at all, to rely upon that witness's testimony." Subpart five is granted only in part and does not disallow what the United States intends to ask of cooperators.

### 6. Exclusion of Drug Dealer Profile as Evidence of Guilt

Subpart six of Harris's omnibus motion moves to preclude the United States "from offering generalized 'profile' or modus-operandi testimony, describing the characteristics, practices, or methods of drug traffickers, as substantive proof that [Harris] fits the profile and is therefore guilty." Doc. 209 at 6. The United States does not intend to offer evidence about Harris fitting a drug courier profile, though testimony about what is believed to be Harris's drug activities and travel is relevant. This Court has already reviewed the limitations imposed on Sergeant Mihajlovic's expert testimony on drug trafficking, and so subpart six is granted to the extent detailed above.

### 7. Post-Arrest Silence

Subpart seven of Harris's omnibus motion seeks to prohibit any reference to Harris's refusal to answer any questions when law enforcement attempted to interview him or his invocation of his right to counsel. "The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution for commenting on the silence of a defendant who asserts the right." Jenkins v. Anderson, 447 U.S. 231, 235 (1980) (citing Griffin v. California, 380 U.S. 609, 614 (1965)). "Miranda warnings contain an implied promise, rooted in the Constitution, that 'silence will carry no penalty.'" Wainwright v. Greenfield, 474 U.S. 284, 295 (1986) (quoting Doyle v. Ohio, 426 U.S. 610, 618 (1976)). It is "fundamentally unfair" for a prosecutor to use a defendant's "postarrest, post-Miranda warnings silence to impeach

their trial testimony." Id. There is no objection from the United States, and subpart seven is granted.

### 8. Preclusion of Burden-Shifting and Comment on Defendant's Decision Not to Testify

Subpart eight of Harris's omnibus motion moves to preclude the United States from commenting on Harris's decision not to testify, on any failure by the defense to produce evidence or call witnesses, or from otherwise suggesting that Harris bears any burden of proof. As noted above, "[t]he Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution for commenting on the silence of a defendant who asserts the right," Jenkins, 447 U.S. at 235, and "it is also well established that prosecutorial misconduct occurs when the prosecutor comments at trial, directly or *indirectly*, on the defendant's failure to testify," United States v. Triplett, 195 F.3d 990, 995 (8th Cir. 1999). Prohibited "[i]ndirect references to a defendant's failure to testify" include comments that "either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally have understood them as a comment on defendant's failure to testify." Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir. 1995) (cleaned up and citation omitted). The United States does not object to this motion, and subpart eight is granted.

## III.     Conclusion

Therefore, it is hereby

ORDERED that the United States' Motions in Limine, Doc. 208, are granted to the extent stated herein.  It is further

ORDERED that Defendant Harris's Motions in Limine, Doc. 198, 199, 200, 209, are granted to the extent stated herein.  It is further

ORDERED that Harris's Motion to Exclude Text Messages, Doc. 217, is denied, unless the United States fails to lay the foundation to allow their admission.


DATED this 7th day of July, 2026.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE